IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TODD ROBERTS,

        Plaintiff,

        v.

SPRINGFIELD UTILITY BOARD, a
Public Body, et al.,

        Defendants.

_____

Case No. 6:19-cv-1595-MC

ORDER

MCSHANE, Judge:

When taking what appears to be an unscheduled vacation day from work, Plaintiff misrepresented to his now former Employer, the Springfield Utility Board ("SUB"), the reason for his absence. Defendant SUB hired attorney Kathy Peck to advise them with regard to Plaintiff's continued employment. Peck, in turn, assigned an associate attorney, Dian Rubanoff, to conduct an investigation into Plaintiff's conduct regarding his absence from work. Among other claims, Plaintiff alleges that Peck and Rubanoff (collectively the "Attorney Defendants") violated his First Amendment rights by restricting his speech during the course of the investigation; and that the outcome of the investigation violated his Due Process Rights.

Because the restrictions on speech were narrowly tailored to protect the integrity of a relatively brief investigation; and because the Attorney Defendants are protected by qualified immunity, Plaintiff's First Amendment claim fails. Because Defendant Attorneys' role in Plaintiffs termination was limited to conducting a factual investigation for, and providing legal

1 – ORDER

advice to, SUB; and because Plaintiff was given notice and the opportunity to be heard, Plaintiff's Due Process Claim fails. Defendant Attorneys' Motion for Summary Judgment is GRANTED.[1]

## BACKGROUND

Plaintiff was employed as the Safety and Environmental Coordinator for SUB. On August 26, 2019, Plaintiff took an unscheduled day off. At 7:30 a.m. that morning, Plaintiff emailed his supervisor, stating "I will be out all today working on the kids school/sport registrations and such to ensure they are all ready for school next week." Brew Decl. Ex. 4, 1; ECF No. 28. When Plaintiff's supervisor learned Plaintiff spent that day at the Oregon coast, SUB began an investigation of Plaintiff for untruthfulness. As noted, SUB hired Peck to provide legal advice and Rubanoff conducted the investigation. On September 12, 2019, SUB placed Plaintiff on paid administrative leave when Bob Fondren hand-delivered a notice to Plaintiff. The Notice stated:

> This memorandum is to notify you that effective immediately, you are being placed on paid administrative leave pending investigation. SUB's decision to place you on paid leave arises from information that raises concerns regarding whether you have engaged in the following unacceptable conduct:

- Dishonesty regarding unscheduled time off.

> While this matter is being investigated, you are prohibited from engaging in communication in any form with any employees of SUB other than me, unless you have received prior written permission from me for such communications.

---

[1] Plaintiff argues he needs to depose the Attorney Defendants and needs the documents contained in his motion to compel to adequately respond to the motion for summary judgment. Pl.'s Resp. 4. Plaintiff states: "For specific examples of needed discovery, the Plaintiff needs the depositions of Peck and Rubanoff to ascertain where and by what methods they got their authority to impose free speech restrictions upon the Plaintiff; what was their agreement with SUB as to their authority; who did they talk to about the restrictions they placed upon the Plaintiff; did they have any discussions with anyone before imposing the restrictions; did they have any discussions with anyone after imposing the restrictions; was their conduct ratified by the other Defendants; and their knowledge of the law justifying such restrictions." *Id.* As noted, the Court previously denied Plaintiff's motion to compel and granted the Attorney Defendants' motion to quash. ECF No. 49. Although Plaintiff requests discovery regarding the Attorney Defendants' discussions and legal advice to SUB, the Court already determined these communications are privileged.

> Any contact with SUB employees, including your supervisor, regarding this
> matter will constitute gross insubordination and be subject to disciplinary action,
> including immediate termination of employment. The directives above are not
> intended to limit your ability to provide information on your own behalf. You will
> be given an opportunity to respond to any claims made against you.

Franz Decl. Ex. 1, 1; ECF No. 38.[2]

On September 19, 2019, Rubanoff interviewed Plaintiff.[3] Plaintiff argues Rubanoff's

comments during that interview were a "prior restraint" in violation of his rights under the First

Amendment.[4] At the outset of that interview, Rubanoff outlined her role as the investigator:

> Regarding concerns that you may have engaged in dishonesty related to your
> work attendance. I'd like to explain my role as an investigator. Although I am an
> attorney, my assignment is to interview you and any other witnesses I deem
> necessary, gather information and make conclusions about what I think actually
> happened. I am unable to give legal advice to you. That's not my role to give legal
> advice to anybody in this matter. I intend to keep an open mind about the
> investigation until after all of the evidence has been gathered. I take my job as an
> investigator very seriously and all I care about is the truth.
>
> * * * *
>
> *To protect the integrity of the investigation, you are restricted from discussing it
> with other employees of SUB while it is ongoing, current or former employees.*
> You have received a separate notice of paid administrative leave, and nothing in
> my introductory notes here is intended to change any instructions you were given
> in that notice.

Franz Decl. Ex 3, 1-2; ECF No. 38.

---

[2] Neither SUB nor Bob Fondren move for summary judgment. Only the Attorney Defendants move for summary judgment. The Court determines only whether the actions of the Attorney Defendants justify summary judgment in favor of those defendants. Whether Fondren's September 12 notice violated Plaintiff's constitutional rights is not at issue in resolving the Attorney Defendants' motion for summary judgment.

[3] The first interview consisted largely of Plaintiff explaining his actions on Monday, August 26, 2019 and whether his actions that day justified Plaintiff's use of the day as an unscheduled day off.

[4] Throughout his brief, Plaintiff seemingly infers that because SUB issued a "prior restraint," it necessarily violated Plaintiff's First Amendment rights. This argument, to the extent Plaintiff makes it, fails to appreciate that a "prior restraint" in the public employer context is "analytically distinct" from typical "prior restraint" cases. *See Moonin v. Tice*, 868 F.3d 853, 857 n.1 (9th Cir. 2017) ("[Plaintiff] calls the prospective restriction at issue here a 'prior restraint,' a phrase that conjures up a long line of cases in which we have held that such restraints are almost never permissible. Because [Plaintiff's] claims concern a policy restricting employee speech, it is analytically distinct from claims involving archetypical prior restraints, like government licensing requirements affecting only citizen speech or judicial orders forbidding certain speech by private parties.").

On September 30, 2019, Plaintiff's attorney requested, in an email to Rubanoff, that the restriction prohibiting Plaintiff from communicating with SUB employees be lifted. Plaintiff's attorney stated, "I would also request that SUB remove the restriction placed on [Plaintiff] not to talk to any employees of SUB. He cannot defend himself when SUB takes away his right to gather information for his defense." Franz Decl. Ex. 4, 2; ECF No. 38.

Rubanoff stated that because she acted solely as an investigator, she forwarded the attorney's email to Peck, the attorney providing legal advice to SUB. On October 1, 2019, Peck sent an email to Plaintiff's attorney noting that "SUB is also declining to lift the restriction on [Plaintiff] from communicating with his co-workers during the investigation. He will have an opportunity to participate in his defense in the event SUB decides to pursue a disciplinary proceeding. In the meantime, the restriction stands." Franz Decl. Ex. 5, 2; ECF No. 38. Plaintiff argues this restriction violated his First Amendment rights.

On October 8, 2019, Rubanoff interviewed Plaintiff–this time in the presence of Plaintiff's counsel–a second time.[5] During that interview, the following exchange occurred:

> Dian Rubanoff: Okay. I'm going to instruct you not to communicate with any potential witness about the information that you've given.
>
> Robert Franz: Do you have authority to say that?
>
> Dian Rubanoff: To not communicate with witnesses about the investigation?
>
> Robert Franz: Yes.
>
> Dian Rubanoff: Yes.
>
> Robert Franz: Okay.

---

[5] The second interview consisted largely of Plaintiff explaining why his statements in the first interview regarding his actions on Monday, August 26, 2019 were not entirely accurate. At this time, the Court takes no position on whether Plaintiff was deliberately untruthful during the first interview or whether he simply got certain dates and times wrong due to (1) the days around the date in question consisting of a hectic time in Plaintiff's life and/or (2) forgetfulness caused by Plaintiff's ADHD. The Court merely notes that many of Plaintiff's statements during the first interview turned out to be inaccurate.

Dian Rubanoff: Yes. Do not communicate with potential witnesses we've discussed about the investigation or about the information you've provided in the investigation or the information you have provided.

Robert Franz: And you're instructing him not to do that even though the person is not an employee of SUB?

Dian Rubanoff: I'm instructing him not to contact them, yes.

Robert Franz: Any witness even if they're not an employee of SUB?

Dian Rubanoff: If it's about the investigation, yeah.

Robert Franz: Okay.

Todd Roberts: Do I need to say okay?

Robert Franz: No you don't say anything, because we're not saying okay.

Dian Rubanoff: If you're going to object to that then I need you to let me know you're objecting to that and why.

Robert Franz: I'm going to object to it, but we still might do it because we're being directed. If he's being directed to do this or face discipline and you have the authority to make that statement then we have to comply with it.

Dian Rubanoff: What is the basis of your objection?

Robert Franz: You're instructing him not to talk to a non-employee of SUB.

Dian Rubanoff: I'm instructing him not to interfere with an investigation by contacting witnesses about the information that he's provided.

Robert Franz: And I don't think you have authority to do that. Well you said you have authority to do that, we'll accept you have the authority to do it.

Dian Rubanoff: I'm doing it as the investigator. you want to know whether—if he's been directed by somebody at SUB then I will get clarification on that.

Robert Franz: Yeah because I mean he's facing discipline for doing that, we have no choice. But I want a directive that he faces discipline if he talks to any witness, even if that witness is a non-employee.

Dian Rubanoff: About this investigation, because that is potentially interfering with witness statements.

Robert Franz: Well then, then what you're saying is, let's just say we're in litigation, and you have the authority to instruct somebody not to talk to witnesses, you can't do that. He has a right to defend himself.

Dian Rubanoff: But we're not in litigation.

Robert Franz: We're probably worse than litigation because he could be terminated. I don't think you have the lawful authority to instruct him not to talk about this matter with anybody else because you're basically saying you cannot defend yourself. You cannot contact any witness even though a non-employee.

Dian Rubanoff: He can absolutely defend himself because that is only going to apply while I'm conducting investigation.

Robert Franz: Well how can he defend himself if he can't talk to these people and get statements from them to supply?

Dian Rubanoff: Well he can after I've completed my investigation, he can contact them all he likes.

Franz Decl. Ex. 6, 2-4; ECF No. 38 (internal time stamps omitted). Plaintiff argues Rubanoff's

restrictions violated his First Amendment rights.

On October 13, 2019, five days after Plaintiff's second interview with Rubanoff,

Plaintiff's attorney provided a list of people for Rubanoff to interview. The attorney requested of

Rubanoff:

First, you have talked Jeff Litle, and you now know that he supports the statements of [Plaintiff]. . . .

Fourth, you need to interview [Plaintiff's] Wife just to learn how hectic that period of time turned out to be. You also need to interview all of [Plaintiff's] coworkers to learn about his credibility; to learn that they know that [Plaintiff] is being set up and discriminated against because of his past whistle blowing; to learn about the fact [Plaintiff] has complained to lower and upper management about not being paid for lunches and breaks; to learn about [Plaintiff's] comments about the unethical conduct of the HR Director and her constant comments to other employees about [Plaintiff's] ADHD (his absent-mindedness and forgetfulness) because he cannot recall events and facts; and to learn about his blowing the whistle on violations of safety issues both within his duties and outside of his duties.

During his employment with SUB, [Plaintiff] has regularly and frequently voiced his concerns over serious safety, health, and environmental violations of state and federal law, and the lack of implementation towards meeting regulatory compliance of both state and federal law.

As all management knows, [Plaintiff] has also complained about the mismanagement of SUB in the hiring of Cam Hanes as the Water Service Center

6 – ORDER

Superintendent and the conduct of Cam Hanes after he was promoted, and what he has done while being the Superintendent. Cam Hanes was and is not qualified for the position, and did not possess the qualifications of the job. SUB changed the requirements of the qualifications needed just to get him promoted. We ask that you interview all those employees that work for Cam Hanes to verify [Plaintiff's] complaints.

Because Cam Hanes is central to this investigation for comparison purposes, and because we need to show there never has been an investigation into [Plaintiff's] complaints about Cam, please, as soon as possible, make Cam Hanes available for me to interview so that I can establish the above facts, and show that [Plaintiff] is not being treated equal. Please also make Janis Brew available for me to interview for the purpose of establishing her knowledge of [Plaintiff's] ADHD; for the purpose establishing [sic] the comments she has made about [Plaintiff's] ADHD; and for the purpose establishing [sic] her knowledge about [Plaintiff's] absent-mindedness and forgetfulness, which SUB is now trying to convert to dishonesty.

Franz Decl. Ex. 7, 2-4; ECF No. 38 (certain scrivener's errors of additional spaces omitted).

In the absence of discovery to date, Plaintiff assumes that Rubanoff did not interview any of the persons detailed in the above email. Pl's. Resp. 15; ECF No. 37.

On Friday, December 6, 2019, Defendant Janice Brew provided Plaintiff with a notice of proposed termination. Brew Decl. Ex. 7; ECF No. 28. The seven-page document outlined the policies Plaintiff was accused of violating, the results of Rubanoff's investigation, and Brew's recommendation that SUB terminate Plaintiff's employment. The letter included Brew's recommendation that Plaintiff violated SUB's policy by taking "an unscheduled day off from work without sufficient justification" without requesting advance permission. Brew Decl. Ex. 7, 7. Brew concluded:

The investigation also shows that in both circumstances described above, you engaged in dishonesty related to your work. Both times you were untruthful to me, and you were also untruthful during the investigation of each incident. When confronted with information demonstrating that your statements were untrue, you took no responsibility for your actions.

In light of the above investigation, I am recommending termination of your employment with SUB.

Brew Decl. Ex. 7, 7.

Brew informed Plaintiff that he was entitled to a pre-termination meeting. Brew noted that meeting was set for the following Tuesday, December 10, 2019 at 10:00 a.m. Brew stated, "The purpose of this meeting is to give you an opportunity to respond to this proposed action and to present any additional information before a final decision is made." Brew Decl. Ex. 7, 7.

On December 11, 2019, Brew sent Plaintiff a Notice of Termination. The notice stated, "You did not attend the [Pre-termination] meeting, did not contact me to seek to have the time or place of the meeting changed and did not provide me with any written statement or materials." Brew Decl. Ex. 8, 1. The notice informed Plaintiff he was terminated, effective at 5:00 p.m. that day. Finally, the notice informed Plaintiff:

> You have the right to seek review of this decision as outlined in Policy 40-2: Employee Problem Solving. You have three (3 business days to supply SUB a written notice of your expression to exercise this right. If you elect to exercise this right, SUB must receive a notice from you by 5:00 PM on December 16, 2019. If you choose to initiate such a review and it reaches Level C, review by the General Manager, you may at that point elect to have an evidentiary hearing consistent with due process requirements if you so choose.

Brew Decl. Ex. 8, 2.

On October 6, 2019, two months before Plaintiff received the Pre-termination notice, Plaintiff filed this action alleging Defendants violated his rights under the First Amendment as well as his Fourteenth Amendment right to due process. Plaintiff later filed an amended complaint bringing certain aiding and abetting claims under state law. As noted, the Attorney Defendants move for summary judgment.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The

court reviews evidence and draws inferences in the light most favorable to the non-moving party.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v.*

*Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-

moving party must present "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ.

P. 56(e)).

## DISCUSSION

Plaintiff brings his First and Fourteenth Amendment claims under 42 U.S.C. § 1983. A

private person can be held liable for violating the civil rights of another under § 1983 only if that

person acted under color of state law. A person acts under the color of state law if his acts can be

"fairly attributable" to the state. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). To

constitute fair attribution: (1) the deprivation of rights must have a causal connection to the

exercise of "some right or privilege created by the State or by a rule of conduct imposed by the

State or by a person for whom the State is responsible," and (2) "the party charged with the

deprivation must be a person who may fairly be said to be a state actor." *Id.*

The parties disagree on whether the attorney defendants, none of whom are employees of

SUB or the state, acted under color of state law necessary for liability under § 1983. In *Filarsky*

*v. Delia*, 566 U.S. 377 (2012), the Supreme Court granted qualified immunity to an attorney in

private practice hired by a fire department to investigate a fire fighter suspected of malingering.

The fire fighter brought § 1983 claims against the fire department and the attorney, arguing the

Defendants violated his Fourth Amendment rights by entering his home during the investigation.

By holding the attorney was entitled to qualified immunity, the Court implicitly recognized that

the attorney was a state actor for the purposes of § 1983 because he was "retained by the City to assist in conducting an official investigation into potential wrongdoing." *Id* at 393-94.

In contrast, The Supreme Court has held that lawyers acting as public defenders are not acting under color of state law while performing "traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). The public defenders were not state actors because, due to the nature of our adversarial criminal law system, a public defender's duties to his client opposes the state's interests. *Id.* at 320-21. For similar reasons, the Second Circuit held that "law guardians" appointed by a state to represent children removed from their parents' custody do not act under color of state law. *Milan v. Wertheimer*, 808 F.3d 961 (2nd 2015). The *Milan* Court analogized these law guardians to the public defenders in *Polk County*, noting that "both are supplied and funded by the state, [but] each acts according to the best interests of the client with 'no obligation to the mission of the state.'" *Id.* at 964 (quoting *Polk County*, 454 U.S. at 320).

The Attorney Defendants here did not perform their duties in an adversarial role to the interests of the state. Rather, the Attorney Defendants were "retained by [SUB] to assist in conducting an official investigation into potential wrongdoing." *Filarsky*, 566 U.S. at 393-94. The restrictions the Attorney Defendants placed upon Plaintiff were reinforced with Plaintiff's understanding that if he violated the restrictions, he would be terminated by SUB. On these facts, the acts of the Attorney Defendants can be "fairly attributable" to the state. *Lugar*, 457 U.S. at 937. Therefore, the Court assumes, without deciding, that the Attorney Defendants are state actors for the purpose of § 1983.

As noted, Plaintiff argues the restrictions Rubanoff placed on Plaintiff during the September 19, 2019 and October 8, 2019 interviews violated his First Amendment rights.

Similarly, Plaintiff argues Peck violated his rights by refusing, in an October 1, 2019 email, to lift the restrictions on Plaintiff's ability to communicate with his co-workers during the investigation. The Court disagrees.

Public employees do not give up their constitutional right to speak on matters of public concern merely because they work in the public sector. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). However, the public employee's rights are not absolute:

> At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.*

This balancing of the employee's rights versus the employer's legitimate interests is known as the *Pickering* test. The first prong asks whether the restricted speech addresses a matter of public concern, "and the second inquiry questions whether, using a balancing test, the public employer can demonstrate that its legitimate interests outweigh the employee's First Amendment rights." *Gibson v. Off. of Att'y Gen., State of Cal.*, 561 F.3d 920, 927 (9th Cir. 2009).

As noted, Rubanoff provided the following restriction at the first interview: "To protect the integrity of the investigation, you are restricted from discussing it with other employees of SUB while it is ongoing, current or former employees." Franz Decl. Ex. 3, 1-2. Plaintiff argues:

> These restrictions were imposed upon the Plaintiff by Ms. Rubanoff to silence the Plaintiff from exposing the illegal activities of Cam Hanes in being paid for not working, and for not being qualified to do his job, which place the safety of employees of SUB and members of the public at risk. These restrictions also prohibited the Plaintiff from telling people who once worked for SUB of the unethical conduct of Janis Brew, and of the hostile work environment created at SUB as set forth by the Plaintiff in Exhibit 8. Simply stated, these restrictions by Dian Rubanoff prohibited the Plaintiff from telling people that work at SUB, or that once worked for SUB, of the conduct of the Plaintiff set forth in Exhibit 8.

Pl.'s Resp. Summ. J., 10; ECF No. 37.

Exhibit 8 is a 30-page exhibit containing Plaintiff's response to interrogatories concerning any complaints Plaintiff made during his employment. ECF No. 38-8. Many of Plaintiff's complaints stem from Plaintiff's belief that SUB employee Cam Hanes was unqualified and spent many hours each workday on personal business like running or promoting his private enterprise. The exhibit is filled with Plaintiff's reports of, in his view, unsafe working conditions. For example, Plaintiff "reported tire tread in general for all fleet vehicles was below safety standards given the environment they work in, weather conditions, and work detail." Ex. 8, 5. Plaintiff also reported on the lack of training or certifications for SUB employees:

> Reported in 7/17 that ESC and WSC field crews were not properly utilizing tag-lines when lifting loads from a crane or service hoist. Also found cranes and hoist's uncertified and employees w/out proper training. Hanes and Miller failed to supply training for employees who failed certification for over 2 years after they were notified and Fleet cranes were finally updated with proper inspection and labeling 1 year later. Reported to Brew.

> Several employees complained there is no certification for forklift operation and I reported to Brew and King and Miller and there was still no certification as of 9/19. . . .

> Reported employee complaints about trench safety at WSC in the field and employee lack of training and C. Hanes lack of qualifications by Operations crew staff multiple times, and Brew stated she would inform GM Nelson. No action was taken. . . .

> I reported C. Hanes was absent or involved in personal business during safety committees in which he was a leadership role and continually failed to do job and or perform duties which left committee lacking and left employees unsafe.

Ex. 8, 9-10.

Speech is "a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Speech alleging that public officials are not discharging government responsibilities, or are engaged in

wrongdoing or breaches of the public trust qualifies as a matter of public concern. *Connick*, 461 U.S. at 148. Speech is not of public concern when it addresses "individual personnel disputes and grievances." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citation omitted).

It is, at best, debatable whether the Attorney Defendants prohibited Plaintiff from speaking on any matters of public concern. The Attorney Defendants informed Plaintiff he was restricted from discussing the investigation with others during the pendency of the investigation. For instance, Rubanoff warned Plaintiff that "To protect the integrity of the investigation, you are restricted from discussing it with other employees of SUB while it is ongoing, current or former employees." Franz Decl. Ex. 3, 1-2. During the second interview, Rubanoff stated, "I'm going to instruct you not to communicate with any potential witness about the information that you've given. . . . Do not communicate with potential witnesses we've discussed about the investigation or about the information you've provided in the investigation or the information you have provided. . . . I'm instructing him not to interfere with an investigation by contacting witnesses about the information that he's provided. . . . About this investigation, because that is potentially interfering with witness statements." Franz Decl. Ex. 6, 2-4; ECF No. 38 (internal time stamps omitted). Peck informed Plaintiff that "SUB is also declining to lift the restriction on [Plaintiff] from communicating with his co-workers during the investigation. He will have an opportunity to participate in his defense in the event SUB decides to pursue a disciplinary proceeding." Franz Decl. Ex. 5, 2; ECF No. 38.

At the time the Attorney Defendants placed the above restrictions on Plaintiff's ability to speak to others about the investigation, the investigation was limited to Plaintiff's untruthfulness in (1) taking the unscheduled day off and (2) scheduling a training for outside of normal working hours. In the two interviews with Rubanoff (or at least the portions of the transcript in the

record), Plaintiff not once complained about any waste in the department or any unsafe or illegal

working conditions. The interview focused solely on Plaintiff's actions during the dates at issue,

and whether Plaintiff was truthful. In other words, the Attorney Defendants merely restricted

Plaintiff from speaking to others about his actions on the dates in question and, correspondingly,

whether Plaintiff was truthful about the events surrounding his unscheduled day off. And

Plaintiff's attorney requested the restrictions be lifted not so that Plaintiff could raise matters of

public concerns, but to allow Plaintiff "to gather information for his defense." Franz Decl. Ex. 4,

2. Such "individual personnel disputes and grievances" are typically not matters of public

concern. *Coszalter*, 320 F.3d at 973 (citation omitted).

Not until October 13, 2019, five days after Rubanoff's second interview of Plaintiff, and

11 days after Peck's email declining to lift the restrictions, did Plaintiff first notify the Attorney

Defendants of any allegations of waste or the argument that Plaintiff was being retaliated against

for past acts of whistleblowing. To the extent Plaintiff placed waste or mismanagement by SUB

into the investigation, the earlier restrictions from the Defendant Attorneys on discussing the

investigation with others could potentially be viewed as restricting Plaintiff from speaking about

matters of public concern.[6] The Court therefore proceeds to the second *Pickering* prong.

Assuming that Plaintiff spoke as a private citizen on a matter of public concern:

---

[6] Whether Plaintiff spoke on a matter of public concern is not the only factor to consider when determining if the restrictions violated Plaintiff's right to speak on "protected speech." As noted, not all speech is protected. Only speech made "in the capacity of a private citizen and not a public employee" is protected. *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009). "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Id.* (internal quotations omitted). Many of Plaintiff's complaints regarding unsafe working conditions in Exhibit 8 would appear to be directly related to his job as the Safety and Environmental Coordinator for SUB. "If the allegations demonstrate an official duty to utter the speech at issue, then the speech is unprotected, and qualified immunity should be granted." *Id.*; *see Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006) ("We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties. Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job."). Because Plaintiff's First Amendment claims against the Attorney Defendants fail on the merits, the Court need not determine whether Plaintiff spoke as a private citizen or instead as a public employee.

14 – ORDER

> The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as an employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

*Garcetti*, 547 U.S. at 418 (internal citation omitted).

The restrictions placed upon Plaintiff by the Attorney Defendants prohibited Plaintiff from communicating to others about the investigation while it was ongoing. Rubanoff stated, "I'm going to instruct you not to communicate with any potential witness about the information you've given. . . . Do not communicate with potential witnesses we've discussed about the investigation or about the information you've provided in the investigation or the information you have provided." Franz Decl. Ex. 6, 2. As noted, the Court has serious doubts on whether the above restriction prohibited Plaintiff from speaking on any matter of public concern. However, even if the restrictions prohibited protected speech, any such restriction is outweighed by SUB's legitimate interest as an employer investigating workplace misconduct. "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418. Rubanoff clearly stated SUB's interest in restricting Plaintiff's speech: "I'm instructing him not to interfere with an investigation by contacting witnesses about the information that he's provided." Franz Decl. Ex. 6, 3.

Perhaps because it is so obvious that the First Amendment does not prevent a public employer from limiting its employee's ability to interfere with an ongoing investigation of workplace misconduct, the case law is somewhat sparse on this exact issue. Although not mentioned by the parties, *Satter v. Wa. State Dep. of Ecol.*, 2010 WL 2342540 (W.D. Wa. 2010) is instructive. There, the employer placed the employee on paid leave and directed the employee

"not to contact any [DOE] employee or discuss the circumstances regarding [her] reassignment with any [DOE] employee." *Id.* at *2 (alterations in original). The employee, like Plaintiff here, alleged the restriction was an unlawful prior restraint. The court disagreed:

> In an attempt to conduct a personnel investigation, Slattery and the other DOE employees involved in initially evaluating Ashborn's allegations agreed that "instructing Ms. Satter not to contact other employees during the investigation was the only way to proceed under the circumstances." The Court's job is not to decide whether the restriction on Satter's speech was in fact the only way to proceed. Rather, the Court's job is to decide whether such restriction was reasonable to effectuate their interests in light of the circumstances and whether those interests outweigh Satter's. The Court concludes that they do. Defendants' instruction was a narrowly-tailored restriction intended to prevent reasonably predicted workplace disruptions. . . . While Satter's First Amendment rights are of utmost importance, Defendants did not restrict her from exercising those rights with the exception of speaking to DOE employees and even then, only intended the restriction to last until the investigation was completed. Satter could have voiced her concerns about DOE's inefficiency, misuse of public funds, and wastefulness to the governor, another public official, or the media. . . . Defendants imposed a specific restriction on who she could speak to, pending the investigation into her workplace conduct. Accordingly, the Court concludes that Defendants' legitimate interests in conducting an investigation and preventing workplace disruption outweigh Satter's rights.

*Id.* at *6-7 (internal citations omitted).

As in *Satter*, SUB's interest in investigating Plaintiff's violations of workplace policies outweigh Plaintiff's First Amendment rights to contact others regarding the statements he made to Rubanoff during the pendency of the investigation. As Plaintiff was being investigated for untruthfulness, SUB had a legitimate interest in ensuring its investigators were able to obtain statements from potential witnesses without Plaintiff having an opportunity to coerce or influence what those witnesses reported to the investigator. Like the restriction in *Satter*, the Court is unable to discern any restriction from the Attorney Defendants prohibiting Plaintiff from communicating with the media regarding any misuse of public funds by SUB. Finally, the restrictions were limited to the pendency of the investigation, with Plaintiff free to contact witnesses after Rubanoff completed her investigation. *See* Franz Decl. Ex. 6, 4 ("Well he can

[talk to these people and get statements from them] after I've completed my investigation, he can contact them all he likes."). The Court concludes the Attorney Defendants did not violate Plaintiff's First Amendment rights.[7]

But even assuming the restrictions here violated Plaintiff's First Amendment rights, the Attorney Defendants would be entitled to qualified immunity. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts must determine whether "the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful. *Id.* at 1200 (quoting *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003)).

In arguing the "prior restraint" issued by the Attorney Defendants violated clearly established law, Plaintiff relies on *Barone v. City of Springfield, Or.*, 902 F.3d 1091 (9th Cir. 2018) and *Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017). *See* Pl.'s Resp. 17-20. In both cases, however, the restrictions are readily distinguishable from the restrictions at issue here.

In *Barone*, the Plaintiff worked as the police department liaison to the City's minority communities. Barone, like the Plaintiff here, was placed on leave pending an investigation for untruthfulness. Ultimately, she was fired after refusing to sign an agreement providing, "Employee will not speak or write anything of a disparaging or negative manner related to the Department/Organization/City of Springfield or its Employees. Employee is not prohibited from

---

[7] The Court reaches this conclusion even recognizing the Attorney Defendants' burden in justifying the restrictions is particularly high "[b]ecause this 'ban chills potential speech before it happens,' as opposed to 'an adverse action taken in response to actual speech[.]'" *Barone v. City of Springfield, Or.*, 902 F.3d 1091, 1105 (9th Cir. 2018) (quoting *U.S. v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468 (1995)).

bringing forward complaints she reasonably believes involves discrimination or profiling by the Department." 902 F.3d at 1102. The Court noted the restriction "flatly bars Barone from speaking negatively about the Department, the City, or their employees" and prohibited speech Barone could make outside of her official duties. *Id.* at 1103. The restriction there was a "broad and open-ended prohibition on 'anything' related to the Department or the City," prohibiting even comments "criticizing the City's cleanliness, water quality, or tax and revenue policies." *Id.*

The court noted that although the police department may well run more efficiently when viewed in a good light by the public, such a justification is not a legitimate interest in a democratic society. *Id.* at 1105-06. Second, although Barone's future remarks could disrupt the workplace, the broad restriction on remarks even about the City of Springfield were not closely related to any concerns about disruption within the workplace. *Id.* at 1106. The court concluded:

> Moreover, Appellees' justifications are inadequate collectively because [the restriction] is not tailored to speech that implicates the Department's justifications. [The restriction] makes no distinction between speech that reasonably could be expected to disrupt the Department's operations and speech that will not cause a disruption. Nor is it targeted to communication conveyed only in Barone's official capacity or communication that would otherwise negatively impact the Department's effectiveness and efficiency. For example, neither justification explains [the restriction's] prohibition on speech concerning "anything…related to the…City" or employees wholly unrelated to the Department. In addition, [the restriction's] targeted focus on only "disparaging or negative speech renders the amended Agreement a posterchild of overt viewpoint discrimination.

*Id.* (internal citations omitted) (ellipses in original).

In contrast, the restrictions here were narrowly tailored to legitimate (and obvious) concerns that by speaking to others about the investigation, Plaintiff would unduly interfere with it. *See* Franz. Decl. Ex. 6, 3 ("I'm instructing him not to interfere with an investigation by contacting witnesses about the information that he's provided."). The restrictions were not targeted to prevent only disparaging speech that would embarrass SUB. Instead, Rubanoff

instructed Plaintiff "not to communicate with any potential witness about the information you've

given. . . . Do not communicate with potential witnesses we've discussed about the investigation

or about the information you've provided in the investigation or the information you have

provided." Franz Decl. Ex. 6, 2. And the restrictions lasted only so long as the investigation

remained ongoing. After Rubanoff completed the investigation, Plaintiff was free to say

whatever he wanted to say, even if his comments would paint SUB in a bad light.

    Similarly, the restriction here, preventing Plaintiff with communicating with others about

an ongoing investigation, bears little resemblance to the sweeping restriction in *Moonin*. There,

the director of a K9 unit informed officers of a new policy permitting "NO direct contact

between K9 handlers or line employees with ANY non-departmental and non-law enforcement

entity or persons for the purpose of discussing the Nevada Highway Patrol K9 program or

interdiction program, or direct and indirect logistics therein." *Moonin*, 868 F.3d at 862 (internal

brackets omitted). This broad restriction forbade whistleblowing and prohibited officers from

"convey[ing] their opinions about *any* aspect of the K9 or drug interdiction programs to

legislators or community groups." *Id.* at 863. The court concluded:

> Government employers have significant and legitimate interests in managing the
> speech of their employees, particularly where the employees' speech pertains to
> their work. And policies explaining how sensitive information ordinarily should
> be handled benefit both employers and employees. We make clear today,
> however, that a public employer generally many not subject *all* employee speech
> regarding a particular government program–whether fact or opinion, and whether
> liable to disrupt the workplace or not–to a blanket ban. A government employer's
> policies imposing prior restraints on their employees' speech as citizens on
> matters of public concern must bear a "close and rational relationship" to the
> employer's legitimate interests, and the broad policy Tice announced did not meet
> this standard.

*Id.* at 875.

    The blanket ban on all speech of K9 officers regarding matters of interest to the public

bears little resemblance to the limitation, tailored to Plaintiff rather than all SUB employees, that

Plaintiff not interfere with an investigation while it was ongoing. "[T]he government's burden when seeking to justify a broad deterrent on speech that affects an entire group of employees is greater than when it is defending an individual disciplinary decision." *Id.* at 865 (quoting *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1210-11 (9th Cir. 1996)). Rather than demonstrating, as Plaintiff argues, that the Attorney Defendants were on notice that the restrictions violated Plaintiff First Amendment rights, *Moonin* instead demonstrates that the restrictions at issue did not infringe on Plaintiff's right to free speech.

Plaintiff's due process claim fares no better. Plaintiff argues:

[I]t is clear that Mr. Roberts was not given the opportunity for a meaningful hearing at a meaningful time as required by the Due Process Clause.

The prohibition of the Plaintiff's free speech lasted from September 12, 2019, to December 11, 2019, the day the Plaintiff was terminated. During this same period of time (September 12, 2019, to December 11, 2019), Defendants were talking to employees of SUB and non-employees of SUB that were witnesses or potential witnesses, gathering information and evidence from these people, knowing that the Plaintiff was prohibited by the Defendants from doing the same thing, because the Plaintiff was ordered not to contact or speak to employees of SUB and non-employees of SUB. By prohibiting the Plaintiff from gathering evidence from former and current employees of SUB and potential witnesses, Defendants made it impossible for the Plaintiff to interview people that had evidence in his favor and from whom the Plaintiff could obtain declarations and evidence. It was like having a trial with the rules being one side could talk to witnesses, gather evidence from witnesses, and present that evidence at trial. But the other side could do none of these things. The end result is not hard to imagine. Preventing the Plaintiff from doing the same thing the Defendants were doing was not fair or just, and was a complete denial [of] the Plaintiff's Due Process rights.

Pl.'s Resp. 21-22.

Putting aside the fact that the Attorney Defendants did not conduct the pre-termination hearing or make the decision to terminate Plaintiff, Plaintiff's argument that the Fourteenth Amendment provides him with the right to conduct an investigation of his own choosing is meritless. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(internal quotations omitted). Each setting invites its own assessment under a *Mathews* analysis and the only general statement that can be made is that persons holding interests protected by the due process clause are entitled to "some kind of a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546 (internal citations omitted).

There is no dispute that Plaintiff received oral and written notice of the policies he was being investigated of violating and had two in-person opportunities with Rubanoff where Plaintiff was allowed to "present his side of the story." In constitutional terms, at least with respect to his claims against the Attorney Defendants, Plaintiff received all the process he was due. Plaintiff has no constitutional right to force the Attorney Defendants to interview witnesses of Plaintiff's choosing or expand the investigation beyond the inquiry into whether Plaintiff was untruthful regarding his unscheduled day off.

Plaintiff brings state law claims under ORS 659A.030(1)(f) and ORS 659A.030(1)(g). ORS 659A.030(1)(f) provides that it is an unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." *Medina v. State*, 278 Or. App. 579, n.4 (alteration in original) (quoting ORS 659.030(1)(f)). Plaintiff must demonstrate he (1) engaged in a protected activity; (2) defendants subjected him to a discriminatory action; and (3) the discriminatory action was taken because Plaintiff engaged in the protected activity. *Id.* at

588. This claim fails because the Attorney Defendants did not subject Plaintiff to any discriminatory action (i.e., termination or any other disciplinary action). To the extent Plaintiff argues the restrictions on communicating with others during the investigation constitutes discriminatory actions, the argument fails because the Attorney Defendants placed the restrictions on Plaintiff before Plaintiff's attorney notified the Attorney Defendants, in an October 13, 2019 email, of any alleged protected activity taken by Plaintiff.

ORS 659A.030(1)(g) provides that it is an unlawful employment practice for "any person, whether an employer or an employee, to aid, abet, incite, compel, or coerce" certain prohibited acts. Multiple state and federal courts, after analyzing ORS 659A.030(1)(g), have concluded that the statute applies only to employers or employees. *See Larmanger v. Kaiser Found. Health Plan of Nw.*, 805 F. Supp. 2d 1050, 1056 (D. Or. 2011); *Branford v. City of Portland, Or.*, No. 18CV03199, 2018 WL 11033310, at *1 (Or. Cir. May 22, 2018). The Court finds those cases persuasive and adopts the reasoning provided there.[8] Because the Attorney Defendants are neither Plaintiff's employer nor employees of SUB, Plaintiff's claim fails.

## CONCLSION

The attorney defendants' Motion for Summary Judgment, ECF No. 26, is GRANTED.

IT IS SO ORDERED.

DATED this 9th day of February, 2021.

<u>/s/ Michael McShane</u>
Michael McShane
United States District Judge

---

[8] Plaintiff does not address the above cases, citing instead a six-line order out of the Circuit Court for Crook County. Franz Decl. Ex. 10. As Plaintiff's cited case provides not one word of analysis supporting the conclusion that ORS 659A.030(1)(g) applies to "any person" rather than only an "employer or employee," the Court does not find the authority persuasive.

22 – ORDER