IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Todd Roberts**,

              Plaintiff,                              Case No. 6:19-CV-01595-MC

         v.                                   OPINION AND ORDER

**Springfield Utility Board**, a
Public Body, **Jeff Nelson,** in his
Individual Capacity, **Bob Fondren**,
In his Individual Capacity, **Kathy
Peck,** in her Individual Capacity,
**Dian Rubanoff**, in her Individual
Capacity, and **Janis Brew**,
In her Individual Capacity,

              Defendants.

_____

**MCSHANE, Judge:**

When taking an unscheduled day off from work, Plaintiff misrepresented the reasons for his absence to his former Employer, the Springfield Utility Board ("SUB"). After SUB began an investigation into Plaintiff's untruthfulness, Plaintiff filed the instant action alleging Defendants SUB, Jeff Nelson, Bob Fondren, and Janice Brew ("Defendants") violated his First Amendment freedoms by restricting his speech during the investigation. Plaintiff further alleges that Defendants violated his Fourteenth Amendment rights by failing to provide him with due process during the investigation.

1 – OPINION AND ORDER

Following his termination at the conclusion of the investigation, Plaintiff amended his complaint to include allegations that Defendants acted in retaliation for Plaintiff's protected disclosures related to workplace safety and ethics at SUB.

The court previously granted summary judgment in this case as to Defendants Kathy Peck and Dian Rubanoff. ECF No. 61. As was the case then, the Court again concludes that Defendants' restrictions on Plaintiff's speech and association were narrowly tailored to protect the integrity of a relatively brief investigation. Additionally, Plaintiff's alleged protected disclosures were made after Defendants began investigating him for the violations for which he was ultimately fired. Plaintiff has not even attempted to show that these reasons were pretextual. Accordingly, Plaintiff's First Amendment and state whistleblower claims fail.

Finally, because Plaintiff was given notice of his termination, a description of the reasons underlying it, and multiple opportunities to be heard, Plaintiff's Fourteenth Amendment due process claim fails. Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff was employed as the Safety and Environmental Coordinator for SUB. On August 26, 2019, Plaintiff took an unscheduled day off. Vickers Decl. Ex. 1, at 26, ECF No. 78. At 7:30 a.m. that morning, Plaintiff emailed his supervisor, Defendant Janice Brew, stating "I will be out all today working on the kids school/sport registrations and such to ensure they are all ready for school next week." Brew Decl. Ex. 4, at 1; ECF No. 28. Plaintiff further stated that, due to his wife being out of town and his children's medical issues, the situation required his urgent attention. Vickers Decl. Ex. 1, at 26. That same morning, Brew checked Plaintiff's work email and found he had sent an email to a coworker; an email Plaintiff later deleted. *Id.* The email indicated that Plaintiff spent the day at the Oregon coast. *Id.* Noting that SUB policy

2 – OPINION AND ORDER

mandates that days off should be requested in advance except for emergency situations,

Defendants began an investigation into Plaintiff for untruthfulness. On September 12, 2019,

Defendants placed Plaintiff on paid administrative leave.  Defendant Bob Fondren delivered to

Plaintiff the following notice:

> This memorandum is to notify you that effective immediately, you are being
> placed on paid administrative leave pending investigation. SUB's decision to
> place you on paid leave arises from information that raises concerns regarding
> whether you have engaged in the following unacceptable conduct: Dishonesty
> regarding unscheduled time off. While this matter is being investigated, you are
> prohibited from engaging in communication in any form with any employees of
> SUB other than me, unless you have received prior written permission from me
> for such communications.

Brew Decl. Ex. 6, at 1.

On September 30, 2019, Plaintiff's attorney requested that the restriction prohibiting

Plaintiff from communicating with SUB employees be lifted. Plaintiff's attorney stated, "I would

also request that SUB remove the restriction placed on [Plaintiff] not to talk to any employees of

SUB. He cannot defend himself when SUB takes away his right to gather information for his

defense." Franz Decl. Ex. 4, 2; ECF No. 38. On October 1, 2019, SUB's attorney sent an email

to Plaintiff's attorney noting that "SUB is also declining to lift the restriction on [Plaintiff] from

communicating with his co-workers during the investigation. He will have an opportunity to

participate in his defense in the event SUB decides to pursue a disciplinary proceeding. In the

meantime, the restriction stands." Franz Decl. Ex. 5, 2; ECF No. 38. Plaintiff argues this

restriction violated his First Amendment rights.

SUB retained an attorney, Dian Rubanoff, to conduct the investigation into Plaintiff's

dishonesty. Vickers Decl. Ex. 1, at 27. On September 19, 2019, Rubanoff conducted her first

interview with Plaintiff, during which Plaintiff disclosed that, contrary to what he told Brew

earlier, his wife was not out of town and she registered their children for school and sports the Friday before Plaintiff's unscheduled day off. *Id.* Plaintiff further stated that on the date at issue, he had not called any OHSU doctors as he had previously claimed. *Id.*

On October 8, 2019, Rubanoff conducted her second interview with Plaintiff. *Id.* Plaintiff contradicted several statements he had made during his first interview, including that he had contacted the finance officer at his children's school regarding a refund for sports activities. *Id.* at 28. And although Plaintiff previously claimed that he had spent as many as five hours on the phone that day addressing various issues, *id.* at 27, an examination of Plaintiff's phone records revealed that he had spent only 22 minutes on the phone on August 26, *id.* at 28 In fact, Plaintiff confirmed at the second interview that had not called any of the people he initially claimed he had called that day. *Id.*

On October 13, 2019, five days after Plaintiff's second interview with Rubanoff, Plaintiff's attorney provided a list of people for Rubanoff to interview. The attorney requested of Rubanoff:

> First, you have talked Jeff Litle, and you now know that he supports the statements of [Plaintiff]. . . .
>
> Fourth, you need to interview [Plaintiff's] Wife just to learn how hectic that period of time turned out to be. You also need to interview all of [Plaintiff's] coworkers to learn about his credibility; to learn that they know that [Plaintiff] is being set up and discriminated against because of his past whistle blowing; to learn about the fact [Plaintiff] has complained to lower and upper management about not being paid for lunches and breaks; to learn about [Plaintiff's] comments about the unethical conduct of the HR Director and her constant comments to other employees about [Plaintiff's] ADHD (his absent-mindedness and forgetfulness) because he cannot recall events and facts; and to learn about his blowing the whistle on violations of safety issues both within his duties and outside of his duties.
>
> During his employment with SUB, [Plaintiff] has regularly and frequently voiced his concerns over serious safety, health, and environmental violations of state and

federal law, and the lack of implementation towards meeting regulatory
compliance of both state and federal law.

As all management knows, [Plaintiff] has also complained about the
mismanagement of SUB in the hiring of Cam Hanes as the Water Service Center
Case 6:19-cv-01595-MC Document 61 Filed 02/09/21 Page 6 of 22 7 – ORDER
Superintendent and the conduct of Cam Hanes after he was promoted, and what
he has done while being the Superintendent. Cam Hanes was and is not qualified
for the position, and did not possess the qualifications of the job. SUB changed
the requirements of the qualifications needed just to get him promoted. We ask
that you interview all those employees that work for Cam Hanes to verify
[Plaintiff's] complaints.

Because Cam Hanes is central to this investigation for comparison purposes, and
because we need to show there never has been an investigation into [Plaintiff's]
complaints about Cam, please, as soon as possible, make Cam Hanes available for
me to interview so that I can establish the above facts, and show that [Plaintiff] is
not being treated equal. Please also make Janis Brew available for me to interview
for the purpose of establishing her knowledge of [Plaintiff's] ADHD; for the
purpose establishing [sic] the comments she has made about [Plaintiff's] ADHD;
and for the purpose establishing [sic] her knowledge about [Plaintiff's]
absentmindedness and forgetfulness, which SUB is now trying to convert to
dishonesty.

Franz Decl. Ex. 7, 2-4; ECF No. 38 (certain scrivener's errors of additional spaces omitted).[1]

On Friday, December 6, 2019, Defendant Brew provided Plaintiff with a notice of

proposed termination. Brew Decl. Ex. 7; ECF No. 28. The seven-page document outlined the

policies Plaintiff was accused of violating, the results of Rubanoff's investigation, and Brew's

recommendation that SUB terminate Plaintiff's employment. *Id.* The letter included Brew's

recommendation that Plaintiff violated SUB's policy by taking "an unscheduled day off from

work without sufficient justification" without requesting advance permission. Brew Decl. Ex. 7,

7. Brew concluded:

The investigation also shows that in both circumstances described above, you
engaged in dishonesty related to your work. Both times you were untruthful to
me, and you were also untruthful during the investigation of each incident. When

---

[1] Plaintiff assumes that Rubanoff did not interview any of the persons detailed in the email. Pl.'s Resp. 15; ECF No.
37.

confronted with information demonstrating that your statements were untrue, you took no responsibility for your actions.

In light of the above investigation, I am recommending termination of your employment with SUB.

Brew Decl. Ex. 7, 7.

Brew informed Plaintiff that he was entitled to a pre-termination meeting. Vickers Decl. Ex 1, at 13. Brew noted that meeting was set for the following Tuesday, December 10, 2019 at 10:00 a.m. *Id.* Brew stated, "The purpose of this meeting is to give you an opportunity to respond to this proposed action and to present any additional information before a final decision is made." Brew Decl. Ex. 7, 7. On December 11, 2019, Brew sent Plaintiff a Notice of Termination. The notice stated, "You did not attend the [Pre-termination] meeting, did not contact me to seek to have the time or place of the meeting changed and did not provide me with any written statement or materials." Brew Decl. Ex. 8, 1. The notice informed Plaintiff he was terminated, effective at 5:00 p.m. that day. Finally, the notice informed Plaintiff:

You have the right to seek review of this decision as outlined in Policy 40-2: Employee Problem Solving. You have three (3) business days to supply SUB a written notice of your expression to exercise this right. If you elect to exercise this right, SUB must receive a notice from you by 5:00 PM on December 16, 2019. If you choose to initiate such a review and it reaches Level C, review by the General Manager, you may at that point elect to have an evidentiary hearing consistent with due process requirements if you so choose.

Brew Decl. Ex. 8, 2.

On October 6, 2019, two months before Plaintiff received the Pre-termination notice, Plaintiff filed this action alleging Defendants violated his rights under the First Amendment as well as his Fourteenth Amendment right to due process. Plaintiff later filed an amended complaint alleging Defendants retaliated against him for making protected disclosures, thereby violating the First Amendment and several state whistleblower statutes. Pl.'s Fifth Am. Compl.,

6 – OPINION AND ORDER

ECF No. 76. The Court previously granted the Motion for Summary Judgment filed by the Attorney Defendants. Order, ECF No. 61. As noted, the remaining Defendants—SUB, Jeff Nelson, Bob Fondren, and Janice Brew—now move for summary judgment on all of Plaintiff's claims and to exclude evidence of the separation agreement that Defendants offered to Plaintiff prior to his termination. Defs.' Mot. Summ. J., ECF No. 77.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Defendants' Motion to Strike

Defendants move to strike from the record the separation agreement that Defendants offered Plaintiff, Franz Decl. Ex. 13, ECF No. 84, arguing it is a settlement communication under Federal Rule of Evidence 408. Defs.' Repl. 2, ECF No. 87. Federal Rule of Evidence 408 prohibits the admission of evidence relating to any of the following:

7 – OPINION AND ORDER

> 1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> 2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

FED. R. EVID. 408(a).

The Ninth Circuit has allowed admission of evidence of settlement discussions to assist in collateral matters, like the determination of attorney's fees or to prove a "pattern of harassment." *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (holding that settlement negotiations probative of a plaintiff's success can be admitted for the purpose of deciding a reasonable attorney fee award); *Block v. Washington State Bar Ass'n*, 860 F. App'x 508 (9th Cir. 2021) (settlement emails were admissible because they were offered to prove the plaintiff's pattern of harassment, and not to prove or dispute the validity of a disputed claim). However, the court only admitted evidence of settlement negotiations in these instances to prove matters completely unrelated to the validity of the claim being negotiated. On the other hand, when a party seeks to introduce settlement negotiations surrounding a claim in order to prove another party's liability in relation to that same claim, that evidence is generally excluded by Rule 408. *Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971, 980 (9th Cir. 2009). Accordingly, admission of such evidence is only proper "when the evidence is offered for *another* purpose." *Id.* (emphasis added).

The Court finds that Rule 408 prohibits the introduction of the separation agreement. In it, Defendants offered Plaintiff $8,000 and the opportunity to resign in

8 – OPINION AND ORDER

consideration for the dismissal of this action. Franz Decl. Ex 13 at 2. When Plaintiff did not agree to the separation agreement, Defendants terminated Plaintiff. Plaintiff now seeks to introduce the separation agreement—in which Defendants offered him an opportunity to resign if he withdrew his lawsuit—as evidence that Defendants terminated him for *not* withdrawing his lawsuit. Plaintiff offers the separation agreement not to prove an unrelated matter, but to establish his retaliation claim. Admitting this evidence would surely contravene the core policy of Federal Rule of Evidence 408:

> [T]he Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury. Moreover, proof of statements and offers made in settlement would often have to be made through the testimony of attorneys, leading to the risks and costs of disqualification.

FED. R. EVID. 408 advisory committee's note to the 2006 amendment.

The Court finds that the plain language of Federal Rule of Evidence 408 mandates exclusion of the separation agreement. Further, because it would severely disincentivize parties from being open to negotiation proceedings, a contrary ruling would penalize a party from engaging in good faith negotiations and run afoul not only of Rule 408, but also against the interests of judicial economy. Accordingly, Defendants' Motion to Strike, ECF No. 87, is GRANTED, and evidence of the separation agreement is excluded.

## II. Prior Restraint on Plaintiff's Free Speech

Plaintiff argues that the restriction placed upon him by Defendants constituted an impermissible prior restraint because it prevented him from engaging in speech and association protected by the First Amendment. Compared to the authority the state possesses when regulating the speech of the average citizen, the state has a much "wider latitude" in regulating the speech of its own employees, especially when the state employee's speech "cannot be fairly

construed as relating to any matter of political, social, or other concern to the community."
*Gibson v. Office of Atty. Gen., State of California*, 561 F.3d 920, 926 (9th Cir. 2009) (quoting
*Connick v. Myers*, 461 U.S. 138, 146 (1983)). When a public employee's speech does relate to
such concerns, however, the state can still regulate that speech if the state's "legitimate interests
outweigh the employee's First Amendment rights." *Id.* at 927 (quoting *Hudson v. Craven*, 403
F.3d 691, 699 (9th Cir. 2005)).

This balancing of the employee's rights versus the employer's legitimate interests is
known as the *Pickering* test. The first prong asks whether the restricted speech addresses a matter
of public concern, "and the second inquiry questions whether, using a balancing test, the public
employer can demonstrate that its legitimate interests outweigh the employee's First Amendment
rights." *Gibson,* 561 F.3d at 927.

Speech involves a matter of public concern if it relates "to any matter of political, social,
or other concern to the community," *Connick*, 461 U.S. at 146, such as "the functioning of
government[,] . . . misuse of public funds, wastefulness, and inefficiency in managing and
operating government entities," *Posey v. Lake Pend Orielle Sch. Dist. No. 84*, 546 F.3d 1121,
1130 (9th Cir. 2008) (quoting *Johnson v. Multnomah Co., Or.*, 48 F.3d 420, 425 (9th Cir. 1995)).
Conversely, speech that merely relates to "individual personnel disputes and grievances" is
typically not of public concern because such speech does not relate "to the public's evaluation of
the performance of governmental agencies." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th
Cir. 2003) (quoting *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983)).

The intended recipient of a public employee's speech can also be a relevant factor in
determining whether that speech is protected by the First Amendment; even if the subject matter
of the speech involves a matter of public concern. *Hagen v. City of Eugene*, 736 F.3d 1251, 1258

10 – OPINION AND ORDER

(9th Cir. 2013). For example, "rais[ing] complaints or concerns up the chain of command at [the employee's] workplace" generally does not qualify as protected speech because it is "undertaken in the course of performing his job." *Id.* However, when a public employee takes those concerns to individuals *outside* the workplace—like a senator or a state inspector general—those communications are ordinarily protected by the First Amendment because they are made as a private citizen. *Id.*

If a public employee's speech relates to a matter of public concern, courts proceed to the second *Pickering* prong, which asks "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Put simply, assuming a public employee's speech relates to a matter of public concern, a public employer may impose restrictions on that speech *only* to the extent that they "are necessary for [the employer] to operate efficiently and effectively." *Id.* at 419. Therefore, "a government employer's policies imposing prior restraints on their employees' speech as citizens on matters of public concern must bear a 'close and rational relationship' to the employer's legitimate interests." *Moonin v. Tice*, 868 F.3d 853, 875 (9th Cir. 2017).

The Court finds that the restriction issued by Defendants did not constitute an impermissible prior restraint on Plaintiff's First Amendment freedoms. The restriction stated as follows:

> While this matter is being investigated, you are prohibited from engaging in communication in any form with any employees of SUB other than me, unless you have received prior written permission from me for such communications. Any contact with SUB employees, including your supervisor, regarding this matter will constitute gross insubordination and be subject to disciplinary action, including immediate termination of employment. . . . You are not to perform any

work while you are on paid leave or visit any job sites unless instructed by me in writing.

Brew Decl. Ex. 6, 1.

This Court previously held that similar restrictions—issued by the Attorney Defendants—were sufficiently narrowly tailored to constitute a permissible prior restraint on Plaintiff's speech.  Order 20–21, ECF No. 61. That restriction only prohibited Plaintiff from speaking to SUB employees while the investigation was pending. *Id.* The Court reaches the same conclusion in analyzing the restriction issued by Defendants here. Defendants issued the above restriction on September 12, 2019 and provided written notice to Plaintiff that Defendants were investigating him regarding his alleged dishonesty as to his reasons for taking an unscheduled day off. Brew Decl. Ex. 6, 1. The restriction stated that Plaintiff, and Plaintiff alone, was prohibited from speaking with SUB employees regarding the investigation. *Id.* Further, the restriction expired upon completion of the investigation. *Id.*

Plaintiff alleges that the restriction prevented him from "speaking as a citizen when he [was] off duty to all employees of SUB when they are off duty . . . on any topic, including matters of public concern." Pl.'s Fifth Am. Comp. at 5. Even assuming the restriction had this effect, this alone does not constitute an improper prior restraint.[2] SUB Defendants had a legitimate interest in conducting an objective investigation free from intervention by Plaintiff—

---

[2] As outlined in the Court's previous Opinion, the clarifications from the Attorney Defendants made it readily apparent that the restrictions were not in fact blanket restrictions on all forms of communications regarding any topic, but instead instructions that Plaintiff "not communicate with potential witnesses we've discussed about the investigation or about the information you've provided in the investigation or the information you have provided. . . . I'm instructing [Plaintiff] not to interfere with an investigation by contacting witnesses about the information that he's provided." Order, 13 (quoting Franz Decl. Ex. 6, 2-4). Plaintiff's strained attempt to argue he feared he could not even waive to a former SUB employee at church is contrasted by the record, including his attorney's own comments to the Attorney Defendants regarding the restriction. Additionally, Plaintiff glances over the fact that even the first restriction contained a limitation on communicating with SUB employees "regarding this matter." Brew Decl. Ex. 6, 1.

who had already deleted evidence relevant to the investigation—even if that restriction temporarily prohibited Plaintiff from speaking to coworkers about matters of public concern. A prior restraint prohibiting Plaintiff from speaking to anyone about any topic might be problematic, but that is far from the case here. Even accepting Plaintiff's argument that the restriction was broad enough to prohibit all forms of communication including, say, a smile at a grocery store, the restriction only prevented Plaintiff from communicating with SUB Employees. Even accepting Plaintiff's alleged understanding of the breadth of the restriction, Plaintiff remained free to take any matters of public concern—including the investigation itself—to the media, state or city officials, or any other outside outlet he desired. Additionally, the restriction explicitly allowed Plaintiff to bring any matter, including any matter of public concern, to Defendant Fondren. Brew Decl. Ex. 6, 1 (noting Plaintiff was permitted to communicate with Defendant Fondren "[w]hile this matter is being investigated.").

In the opinion granting the Attorney Defendants' Motion for Summary Judgment, this Court noted the restrictions at issue here differed from restrictions the Ninth Circuit previously concluded violated the First Amendment rights of public employees. Opinion, 17-20 (discussing the differences between the restrictions here and those in *Barone v. City of Springfield, Or.*, 902 F.3d 1091 (9th Cir. 2018) and *Moonin*). Plaintiff makes no attempt to distinguish those cases, merely rehashing arguments the Court previously rejected regarding the alleged breadth of the "prior restraint" at issue here. Pl.'s Resp. 17-18. Similarly, Plaintiff does not address the fact that, as noted by the Court in the earlier opinion, his First Amendment argument "fails to appreciate that a 'prior restraint' in the public employer context is 'analytically distinct' from typical 'prior restraint' cases." Opinion 3 n 4 (quoting *Moonin*, 868 F.3d at 857 n.1). In fact, one reading Plaintiff's response only to this second round of dispositive motions would be left with

no clue that the Court previously rejected essentially identical arguments that Plaintiff makes now.

Because the prior restraint issued by SUB Defendants applied only to Plaintiff, prevented him from communicating only with SUB employees, and expired upon the conclusion of a relatively brief investigation, the Court again finds that it was narrowly tailored to SUB's legitimate interest in conducting an investigation into Plaintiff's dishonesty. Accordingly, Plaintiff's first, second, third, and fifth claims fail.

### III. First Amendment Retaliation

Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him for filing a lawsuit. Pl.'s Fifth Am. Compl. ¶¶ 30–36. To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) they engaged in protected speech; (2) they suffered an adverse employment action; and (3) that their protected speech was a "substantial or motivating factor" for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

It is undisputed that Plaintiff suffered an adverse employment action: his termination. Plaintiff fails, however, to show a causal link between the filing of this action and his termination. There are three ways a plaintiff can demonstrate the causal link required for a First Amendment retaliation claim: (1) evidence regarding the proximity in time between the plaintiff's protected speech and the adverse employment action; (2) evidence that the plaintiff's employer "expressed opposition to the plaintiff's protected speech"; and (3) evidence that plaintiff's employer's proffered explanations for the adverse employment action were "false and pretextual." *Id.*

Plaintiff suffered an adverse employment action on December 11, 2019, when he was officially terminated. Brew Decl. Ex. 8, 2. The notice of termination indicated that Plaintiff was being terminated due to his unjustified absence from work—which occurred on August 26, 2019—and his untruthfulness during Defendants' subsequent investigation into the matter, which began on September 12, 2019. Vickers Decl. Ex. 1, at 29–30. Plaintiff argues that the real reason for his termination was the lawsuit he filed on October 6, 2019, over one month after Defendants began the investigation into Plaintiff's misconduct and placed him on leave.

Plaintiff does not appear to dispute that Defendants had a legitimate reason for terminating him that was completely unrelated to the filing of this action. The notice of termination that Defendants gave to Plaintiff clearly stated that his termination was due to his violation of several policies:

> Policy 10-23, Attendance and Punctuality, states: "Employees are expected to keep unscheduled absences and tardiness to a minimum by making every effort to arrive to work as scheduled and return from meal and rest periods on time."

> Policy 20-1, Paid Time Off Program, states, "Except in emergency or illness situations, requests for PTO, EIB and/or Comp time must be submitted to an employee's supervisor in advance."

> Policy 40-3, Corrective Action, lists as a Class 1 infraction, "Dishonesty of any type including falsifying any document or verbal misrepresentations." The policy states that a Class 1 infraction "should generally result in immediate dismissal."

Vickers Decl. Ex 1, at 29–30.

The notice also stated the conclusions yielded by Defendants' investigation into Plaintiff's dishonesty, noting that (1) he "took an unscheduled day off without sufficient justification"; (2) he was untruthful to his supervisor, Defendant Brew; (3) he was untruthful during the subsequent investigation; and (4) he took no responsibility for his actions. *Id.*

Plaintiff has the burden to introduce evidence that the above reasons proffered by Defendants for his termination were false and pretextual. However, Plaintiff offers no evidence, nor does he even attempt to argue, that he did not commit the policy violations he was accused of. In fact, when he was offered the opportunity to attend a pre-termination meeting to contest the reasons for his termination or offer evidence contradicting the findings of SUB's investigation, Plaintiff declined. *Id.* at 13, 15; Brew Decl. Ex. 8, at 1.

On the other hand, Defendants have buttressed their proffered reasons with substantial evidence that Plaintiff *did* violate the policy. In fact, the evidence demonstrating Plaintiff was untruthful during the investigation—confirmed by Plaintiff himself during his first and second interviews with Rubanoff—is so strong that Plaintiff makes no attempt to argue he was not untruthful. The evidence confirms that although Plaintiff attempted, when pressed by his supervisor, to show unexpected emergencies justified the unscheduled day off, the investigation reveals there were no emergencies on the day in question. Apparently, Plaintiff simply wanted to spend the day at the beach and, after being confronted, attempted to manufacture several emergencies justifying the unscheduled absence.

The morning of August 26, Plaintiff originally told Defendant Brew that he would not be coming in that day because his wife was out of town and he had to register his children for school and sports. Vickers Decl. Ex. 1, at 26. Plaintiff also claimed that he had to call OHSU regarding his children's medical issues. *Id.* Plaintiff told Brew he spent "hours" on the phone with OHSU that day. *Id.* Brew then discovered the email Plaintiff sent indicating he was actually at the Oregon coast. *Id.* Soon after, Plaintiff then attempted to delete the email. *Id.* During Plaintiff's subsequent interviews with the investigating attorney, it was discovered that Plaintiff's wife returned to town on August 23 and was able to complete their children's registration the

16 – OPINION AND ORDER

Friday before Plaintiff's day off. *Id.* at 27. Plaintiff also claimed to have spent as much as five hours on the phone on August 26 dealing with various issues, but an examination of his phone records revealed only 22 minutes of phone calls—during which he did not contact any of the people he previously claimed to have contacted.[3] *Id.* at 28.

Plaintiff would have the Court believe that these violations had nothing to do with his termination, and that his job was not in jeopardy until he filed his Complaint on October 6. The Court rejects this argument. Plaintiff cannot, upon being placed on leave and finding out that he is being investigated for misconduct, decide to engage in retroactive protected activity in a last-ditch attempt to insulate himself from discipline. Defendants made the decision to investigate Plaintiff nearly one month before Plaintiff engaged in any protected activity. To the extent Plaintiff argues Defendants retaliated against him because he threatened to blow the whistle on safety and waste issues within SUB, this argument is meritless. Although Plaintiff's Amended Complaint raised issues Plaintiff states he would have raised absent the "prior restraint," those amendments first appeared in February 2020, three months *after* Defendant terminated Plaintiff.[4]

Defendants produced overwhelming evidence demonstrating they terminated Plaintiff based on the investigation which revealed Plaintiff attempted to fabricate emergencies justifying

---

[3] Plaintiff previously stated he spoke with his son's football coach about a medical condition and spoke with Roto Rooter that morning about a plumbing emergency. *Id.* During the second interview with Rubanoff, however, Plaintiff confirmed he did not speak to the coach or Roto Rooter on the day off. *Id.* at 28. Plaintiff also clarified to Rubanoff that despite initially telling Defendant Brew he spent "hours" on the phone with OHSU on the day in question, he never even placed a call to OHSU that day.

[4] Additionally, as noted in the Court's earlier opinion, Plaintiff's attorney first raised allegations of retaliation five days after the second Rubanoff interview. Opinion 14. By that time, Plaintiff already confirmed his multiple instances of untruthfulness. Additionally, as noted in the earlier opinion, the Court is skeptical, considering Plaintiff's job as Safety and Environmental Coordinator, that any of Plaintiff's alleged statements would fall outside of his professional duties to report such safety issues. Opinion 14 n.6. After all, any concerns raised as part of his duties as Safety Coordinator would not be protected speech. *Id.* (citing *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)). As with all of the Court's other conclusions from the earlier opinion, Plaintiff simply fails to address whether Plaintiff's position required him to come forward with the alleged safety issues.

the unscheduled day off. Plaintiff's own admissions during the interviews with Rubanoff confirmed his earlier statements regarding the emergencies were not true. SUB's written policy states that "[e]xcept in emergency or illness situations, requests for [paid time off] must be submitted to an employee's supervisor in advance." *Id.* at 29 (quoting Policy 20-1). Under SUB policy, any dishonesty, including "verbal misrepresentations" "should generally result in immediate dismissal." *Id.* (quoting Policy 40-3). Plaintiff offers no evidence from which a jury could infer that the filing of this action or his alleged whistleblowing regarding safety concerns—as opposed to Plaintiff's own untruthfulness—were substantial or motivating factors in his termination. After all, Plaintiff only filed this action and raised concerns *after* (1) Defendant placed him on leave and began investigating Plaintiff for untruthfulness and (2) Plaintiff confirmed that he had in fact made untrue statements to Brew and Rubanoff during the investigation.[5] Accordingly, Plaintiff's fourth claim fails.

## IV. State Law Claims

Plaintiff alleges that Defendant SUB violated ORS 654.062 when they terminated him for (1) making good faith complaints to OSHA and DEQ and (2) opposing unsafe work conditions that were in violation of Oregon laws, rules, and regulations. Pl's Fifth Am. Compl. ¶¶ 56–57. Plaintiff further claims that SUB violated ORS 659A.199 when they terminated him for making good-faith complaints regarding "what he reasonably believed to be [SUB's] mismanagement and/or abuse of authority regarding actual and potential improprieties in . . . violation" of federal and state regulations. *Id.* ¶ 59.

---

[5] Plaintiff's second interview occurred a few days after he filed this action, during which he confirmed multiple statements he made during the first interview were not true. However, he filed the action after the first interview, where Plaintiff confirmed that nearly all of his previous statements to Brew regarding the alleged emergencies were in fact untrue. That Plaintiff confirmed additional untrue statements after filing the Complaint does not somehow render his termination for making untrue statements a pretext for unlawful discrimination.

Plaintiff alleges a plethora of conduct by SUB that he claims "illustrate[s] a system-wide or pervasive pattern of misconduct and the allowance of unethical conduct" and claims he was discharged for making these disclosures *Id.* ¶¶ 41–55. Indeed, the statute prohibits an employer from discharging an employee for opposing, initiating (or cause to be initiated) any proceeding related to, unsafe working conditions. OR. REV. STAT. § 654.062(5) (2021). It is generally accepted that "if [a] plaintiff can establish that he suffered discrimination at his employment because he made a complaint 'related to' safe and healthful working conditions, he has met the elements necessary to establish a claim under ORS 654.062(5)(a)." *Butler v. Dept. of Corrections*, 909 P.2d 163, 170–71 (Or. Ct. App. 1995).

The "discrimination" alleged by Plaintiff is that he was terminated by SUB, and he puts forth an extensive list of allegations of misconduct and unsafe work conditions, as well as evidence that he reported such activity to relevant government entities. Pl.'s Fifth Am. Compl. ¶¶ 41–55. However, even taking Plaintiff's allegations as true, his argument lacks merit: He must put forth evidence showing that SUB terminated him *because* he made these allegations or complaints. The analysis under ORS 659A.199 similarly requires that a plaintiff "establish a causal link between [their] complaints" and their employer's adverse action. *Rohrer v. Oswego Cove, LLC*, 482 P.3d 811, 816 (Or. Ct. App. 2021) (quoting *Ossanna v. Nike, Inc.*, 415 P.3d 55 (Or. Ct. App. 2018) *aff'd* 445 P.3d 281 (Or. 2019). Therefore, Plaintiff's arguments under these statutes fail for the same reason his retaliation claim under the First Amendment fails: he has not shown causation. As noted, SUB did not learn of Plaintiff's alleged complaints until five days after the second Rubanoff interview, when Plaintiff's attorney outlined the complaints in a letter to the Attorney Defendants. But as outlined above, in that second interview, Plaintiff confirmed that he had been untruthful with respect to virtually all of the allegedly unexpected emergencies

19 – OPINION AND ORDER

he previously argued justified the unscheduled time off. Accordingly, Plaintiff's sixth and seventh claims fail.

Plaintiff further alleges that SUB terminated him in retaliation for filing a lawsuit, thereby violating ORS 659A.230, which "prohibits employers from taking adverse action, including discharging, demoting, suspending, discriminating, or retaliating against an employee in any manner based on an employee's good faith reporting of a violation of federal or state law." OR. REV. STAT. § 659A.230 (2021). In order to establish a prima facie case for retaliation under this statute, Plaintiff must show that (1) he engaged in protected activity; (2) he was thereafter subjected by [his] employer to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003). While the filing of a lawsuit can certainly be protected activity, Plaintiff again must establish that SUB terminated him because of the protected activity—and he filed the lawsuit over a month after SUB initiated investigatory proceedings and placed him on leave. Additionally, Plaintiff filed this action nearly one month after he made numerous untrue statements during the first Rubanoff interview and confirmed his earlier statements to Brew were not true. Accordingly, Plaintiff's twelfth claim also fails because he has not established causation.

Plaintiff's eighth claim asserts that the restrictions placed upon him by SUB violated ORS 659A.203 by prohibiting and discouraging him from making protected disclosures relating to SUB's alleged violations of federal and state laws, rules, and regulations. Pl.'s Fifth Am. Compl. ¶ 62. Under ORS 659A.203, a public employer may not "[p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of … [a] violation of any

20 – OPINION AND ORDER

federal, state or local law, rule or regulation by the public or nonprofit employer." OR. REV. STAT. §659A.203(1)(b)(A) (2021). Unsurprisingly, the analysis of a claim under ORS 659A.203 also requires a causal link: "a plaintiff must prove that [a] defendant's unlawful motive was a substantial factor in his termination, or, in other words, that the plaintiff would have been treated differently in the absence of the unlawful motive." *Harper v. Mt. Hood Cmty. Coll.*, 388 P.3d 1170, 1174 (Or. Ct. App 2016) (quoting *LaCasse v. Owen*, 373 P.3d 1178 (Or. Ct. App. 2016)).

Also unsurprising, in light of this Court's previous analysis, is Plaintiff's failure to establish the causal link requirement under this claim. SUB issued the restriction on September 12, 2019, at the outset of the investigation into Plaintiff's misconduct. Franz Decl. Ex 1, 1, ECF No. 38. Plaintiff did not file this action until October 6, 2019. And, again, he first alerted Defendants to potential safety or mismanagement issues five days after the second Rubanoff interview. It follows that the September 12, 2019 restriction, which preceded Plaintiff's alleged whistleblowing by nearly one month, could not have been an attempt by SUB to prohibit future protected disclosures. Even if it was, it would have been an ineffective measure: as this Court has found, the restriction only prevented Plaintiff from speaking to SUB employees; Plaintiff was perfectly capable of communicating any protected activity—like violations of law by SUB—to the media or any entity he so desired while remaining compliant with SUB's restriction. The fact that the restriction eventually hampered Plaintiff's latent desire to make protected disclosures to other SUB employees was merely an incidental effect of what this Court has established was a valid, narrowly tailored prior restraint on Plaintiff's speech. Accordingly, Plaintiff's eighth claim fails.[6]

---

[6] Additionally, the record demonstrates Plaintiff's attempts to lift the restriction stemmed not from any desire to blow the whistle on SUB, but instead to Plaintiff's desire to defend himself from any allegations of untruthfulness. For example, on September 30, 2019, Plaintiff's attorney requested SUB lift the restriction because Plaintiff

Plaintiff's tenth and eleventh claims are made against all Defendants *except* SUB—Jeff Nelson, Bob Fondren, and Janice Brew—alleging that (1) their individual conduct was discriminatory action taken in retaliation for Plaintiff's opposition of unlawful employment practice in violation of ORS 659A.030(1)(f) and (2) their individual conduct aided and abetted SUB in committing the above alleged violations in violation of ORS 659A.030(1)(g). Pl.'s Fifth Am. Compl. ¶¶ 70–75. Because this Court has already determined that the above conduct did not constitute any statutory violations, and because one cannot "aid and abet" the commission of a violation when there is no violation in the first place, Plaintiff's tenth and eleventh claims fail.

## IV. Due Process Claim

Plaintiff alleges that Defendants deprived him of procedural due process protections by (1) failing to provide Plaintiff with an opportunity to gather evidence and (2) failing to give Plaintiff the opportunity to confront the witnesses whose statements Defendants used against Plaintiff. Pl.'s Fifth. Am. Compl. ¶¶65–69. A procedural due process claim has three elements: (1) a property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. Cty. Of Santa Clara*, 955 F.2d 898 (9th Cir. 1993).

The Constitution protects property interests; it does not create them. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Property interests are created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those

---

"cannot defend himself when SUB takes away his right to gather information to his defense." Franz Decl. Ex. 4, 2; ECF No. 38. And during the second Rubanoff interview, Plaintiff's attorney again argued SUB must lift the restriction, stating "how can he defend himself if he can't talk to these people and get statements from them to supply?" Franz Decl. Ex. 6, 2-4. Finally, Plaintiff did not file his amended complaint containing examples of what he would have blown the whistle about until several months after SUB terminated Plaintiff.

benefits." *Id.* Put simply, for an individual to have a "constitutionally protected interest in continued employment," they must have more than an abstract desire or a unilateral expectation of continued employment—state law must create a "reasonable expectation or a 'legitimate claim of entitlement to it.'" *Brady v. Gebbie*, 859 F.2d 1543, 1547–48 (9th Cir. 1988) (quoting *Roth*, 408 U.S at 577). In Oregon, such legitimate claims of entitlement arise "solely from statutes or . . . regulations adopted pursuant to a delegation of authority." *Id.* at 1549 (quoting *Papadopoulous v. Oregon State Bd. of Higher Educ.*, 511 P.2d 854, 872 (Or. App. 1973)). Absent additional statutory protections, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Plaintiff advances no Oregon statutory authority that grants him the heightened due process protections to which he feels he was entitled. Additionally, this Court has already concluded that Defendants provided Plaintiff with all the process that he was due: notice of the charges against him and an opportunity to be heard:[7]

> There is no dispute that Plaintiff received oral and written notice of the policies he was being investigated of violating and had two in-person opportunities with [the investigator] where Plaintiff was allowed to "present his side of the story." In constitutional terms, at least with respect to his claims against the Attorney Defendants, Plaintiff received all the process he was due. Plaintiff has no constitutional right to force the Attorney Defendants to interview witnesses of Plaintiff's choosing or expand the investigation beyond the inquiry into whether Plaintiff was untruthful regarding his unscheduled day off.

Order Granting Att'y Defs. Mot. Summ. J. 21.

---

[7] "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 546 (1985).

23 – OPINION AND ORDER

It makes no difference that Plaintiff presently asserts that SUB, rather than Attorney Defendants, deprived him of procedural due process protections. Plaintiff calls into question the same investigatory procedures, and argues he is entitled to heightened due process protections that, as this Court previously found, lack any constitutional or statutory support. Plaintiff has no constitutional or statutory entitlement that the investigators interview witnesses of his choosing. Plaintiff was given ample notice of the charges against him multiple opportunities to be heard. Additionally, in the termination notice, Defendants explicitly alerted Plaintiff to his right to appeal that decision including, eventually, the right to an evidentiary hearing. Vickers Decl. Ex. 1, 24. In constitutional terms, Plaintiff was entitled to nothing more. That Plaintiff voluntarily chose not to attend the pre-termination meeting or appeal the termination decision does not mean process was not available. Accordingly, Plaintiff's ninth claim fails.

## CONCLUSION

Defendant's Motion to Strike the Separation Agreement from the Record, ECF No. 77, is GRANTED. Defendants' Motion for Summary Judgment, ECF No. 77, is GRANTED with respect to all twelve of Plaintiff's claims.

IT IS SO ORDERED.

DATED this 2nd day of December, 2021.


_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge


24 – OPINION AND ORDER